62 269
133a 336
62 269
143a 439

DUNCAN F. CAMERON AND ANOTHER, RESPONDENTS, *v.* THE NEW YORK AND MOUNT VERNON WATER COMPANY AND OTHERS, APPELLANTS.

*Corporations — consolidation — existing rights saved — combinations—public policy— acquiescence.*

In 1873 a company was incorporated under the village water-works act, with a capital of $25,000. It was known as the Mount Vernon Water Company, and was to furnish water to the village of Mount Vernon. In 1886 a company, known as the New York and Mount Vernon Water Company, was formed under the general manufacturing act, with a capital of $200,000, for the same purpose. It purchased at par the stock of the first-mentioned company, which thereafter ceased to carry on business. In 1891 another company, known as the New York City Suburban Water Company, and designed to furnish water to the village of Mount Vernon and adjoining places, was incorporated under the general manufacturing act, with a capital of $1,500,000. On April 28, 1891, the trustees of the two latter companies having entered into an agreement to consolidate such companies, a stockholder in the New York and Mount Vernon Water Company began an action and obtained a temporary injunction enjoining the proposed consolidation, which he alleged would be detrimental to his rights. *Held,* that the statutes authorizing consolidation (chap. 960 of the Laws of 1867, chap. 374 of the Laws of 1877, chap. 367 of the Laws of 1884, and chap. 567 of the Laws of 1890) were not repealed by the business corporation law (chap. 567 of the Laws of 1890), nor by the stock corporation law (chap. 564 of the Laws of 1890).

That the existing rights of existing corporations were saved by section 22 of chapter 567, section 24 of chapter 563 and section 71 of chapter 564 of the Laws of 1890.

That the right to consolidate was an existing right when said last-mentioned acts were passed.

That it was not against public policy for two corporations doing the same business to consolidate into one new corporation ; the evil condemned being the combination of two or more corporations to prevent competition between themselves or between themselves and others.

That, as the stockholders of the New York and Mount Vernon Water Company had, at the time of the purchase of the stock of the Mount Vernon Water Company, assented to such purchase, and had long acquiesced in it, it was too late for either party to the transaction to question it now.

That, upon such purchase, said stock became part of the general assets of the vendee.

Appeals by the defendants, the New York and Mount Vernon Water Company, its trustees, the Mount Vernon Water Company and the New York City Suburban Water Company, from an order, entered in the office of the clerk of the county of Westchester in June, 1891, denying their motion to vacate an injunction restraining them and each of them, during the pendency of this action, from making any transfer, assignment or other disposition of the capital stock of the Mount Vernon Water Company ; and from making or entering into any arrangement, contract or agreement for the consolidation of the three defendant corporations, or any two of them ; and from making or entering into any arrangement, contract or agreement by which the management or control of the stock, rights or franchises of the New York and Mount Vernon Water Company or the Mount Vernon Water Company shall be transferred, pledged or disposed of to the defendant, the New York City Suburban Water Company, or any other water company formed or organized for the purpose of supplying water to the village of Mount Vernon aforesaid.

The Mount Vernon Water Company was incorporated under the village water-works act passed in 1873. The other companies, the New York City Suburban Water Company and the New York and Mount Vernon Water Company, were incorporated under the general manufacturing act (chap. 40, Laws of 1848). The capital stock of the New York and Mount Vernon Water Company was $200,000, and the date of incorporation was January 25, 1886 ; the capital stock of the New York City Suburban Water Company was $1,500,000,

and the date of incorporation was March 26, 1891. The Mount Vernon Water Company ceased to carry on business after March 1886, about which time its stock was purchased at its par value by the New York and Mount Vernon Water Company. The latter company still retains said stock.

The complaint alleged that the consolidation would depreciate the value of the plaintiff's stock in the New York and Mount Vernon Water Company, and of his stock in the Mount Vernon Water Company (in which he also claimed an interest) by preventing competition, and for other reasons stated in the complaint.

A preliminary injunction forbidding consolidation was granted. A motion to vacate it was denied, and from the order denying the motion the companies appealed as above stated.

*John B. Gleason*, for the appellants.

*Albertus Perry*, for the respondents.

BARNARD, P. J.:

In 1873 a company to furnish pure water to the village of Mount Vernon was incorporated under the village water-works act, with a capital of $25,000, under the name of the Mount Vernon Water Company. In 1886 the defendant, the New York and Mount Vernon Water Company, was incorporated under the general act authorizing the formation of corporations for manufacturing and other purposes. This company obtained a contract from the village in March, 1886, to furnish water, if pure, for twenty years. An exclusive privilege for establishing and maintaining water-works within and near the village was given by ordinance of the village. The stock of the Mount Vernon Water Company was purchased by the new company and held for the stockholders in the same. The stockholders in the old Mount Vernon Water Company were paid the full par value of their stock, and as the object was to exterminate the prior company and merge it in the New York and Mount Vernon Water-Works Company, no right exists in the stockholders of the old company to demand new scrip for the stock for which they have been paid. No new right exists in respect thereto beyond whatever advantage may result, from the purchase of the old stock, to the stockholders in the new company. The consolidation appears to have been mutually agreed upon, and the acquiescence of the old company has

been so long continued that justice cannot be now done after the use of the franchise and the property of the corporation has been delivered over to the new company. The village of Mount Vernon is not a party, and the plaintiffs have no duty in respect to the rights or obligations of the village. The sole question, therefore, is whether the Mount Vernon Water-Works Company can consolidate with a corporation known as the New York City Suburban Water Company, incorporated under the general law in respect to the formation of manufacturing corporations. The corporations are of the same nature and they cover the same territory. In such a case the consolidation is authorized, or was at the passing of the resolution by the two companies, to be consolidated under chapter 374, Laws of 1877. All the steps taken towards consolidation were in conformity with the act permitting the consolidation, and the repeal of the consolidation act, subsequent thereto, in 1891, reserved, as to such inchoate and incompleted acts, the right to perfect them to completion.

. The order should, therefore, be reversed, with costs and disbursements, and the motion to dissolve the injunction granted with costs.

PRATT, J. :

The injunction was continued in this case on the assumption that the proposed consolidation of the two water-works corporations was without lawful authority. Respondent's counsel justify the injunction solely on those grounds. They contend that the laws in force prior to May 1, 1891, so far as they authorized consolidation, have been repealed by the new business corporation law (chap. 567), and the stock corporation law (chap. 564) passed in 1890. They insist that consolidation cannot be effected under the stock corporation law because its tendency would be to prevent competition, and because it would be against public policy. The facts are substantially undisputed.

I am unable to accept the respondent's view. The consolidation of corporations engaged in the same general line of business is not against public policy. The legislature has permitted it for years, and still permits it. (Laws 1867, chap. 960; Laws 1877, chap. 374; Laws 1884, chap. 367; Laws 1890, chap. 567, § 13.) There is a great difference between the consolidation of two corporations into one new corporation, and the *combination* between two existing

corporations for the prevention of competition. The former is permitted and the latter is condemned.

It is not necessary to point out the distinction so far as the public or private good is concerned. It is enough that the legislature has drawn the distinction. (See § 13, chap. 567, Laws 1890; § 7, chap. 564, Laws 1890.)

I do not think that the new acts have repealed the old provisions which authorized consolidations. They have simply continued them. True, the old acts appear to be included in the schedule of acts repealed; but the saving and construction clauses of both acts, when read in connection with those provisions of the new act which authorize and provide for consolidation, clearly show that there has been no material change in the law. Existing rights of existing corporations are all saved by section 22, chapter 567, section 24, chapter 563 and section 71, chapter 564, Laws of 1890. Certainly two new corporations might be organized now under the new law to do the business of supplying water for a village, because that is a "lawful business." (Sec. 2, chap. 567, Laws 1890.) The effect of the repealing clause is to require new corporations to organize under the new general law instead of under the old laws. Certainly two new corporations like the two in question might consolidate under this new law, but they could not maintain their separate existence and *combine to* prevent competition between them, or between themselves and others; and if such new ones could consolidate under this new law, then the express provisions of section 13 authorize the same thing by old corporations doing the same business as new ones organized under the new laws.

Turning, now, to the saving clause (1890, chap 567, § 22), we read that the repeal of a law by that act "shall not affect nor impair any * * * *right* accruing, accrued or acquired * * * prior to May 1, 1891, under or by virtue of any law so repealed; but the same may be asserted * * * as fully and to the extent as if such law had not been repealed." Hence, if the old corporation had a *right* to consolidate under the old laws, that right would seem to be saved by this clause. And, again, we read, in section 23, that where the provisions of this new law are substantially the same as those existing April 30, 1891, they shall

be continued as a continuation of such old laws, and not as new enactments; and, so far as they differ, they are to be deemed mere modifications or amendments of old laws. I regard it as plain that the object of all these new provisions was simply in the line of codification. It, therefore, seems to me that the injunction proceeds upon an erroneous theory.

Perhaps some question might have arisen as to the right of the New York and Mount Vernon Water Company to hold the stock of the Mount Vernon Water Company by purchase, if the complaint had not alleged that that purchase was made with the assent of the stockholders of the former. But it appears that such purchase was made with the assent of those stockholders. Hence the purchase itself cannot be the subject of complaint by any of those stockholders. They are estopped to question the purchase, nor can any stockholder of the Mount Vernon Water Company be heard to question the purchase or holding. All the individual holders of that company have sold out. It has all been purchased by the New York and Mount Vernon Water Company.

The complaint assumes that that purchase was made for the purpose of a distribution of that stock among the stockholders of the New York and Mount Vernon Water Company. I do not so understand their rights. Such a distribution would have been a dividend in property which had been purchased and paid for with capital of the New York and Mount Vernon Water Company. In other words, it would have been a dividend out of capital which could not have been contemplated. On the contrary, the purchase of that stock made it a part of the property of the company, and not as a special trust for its stockholders. Their interests in that property were the same as in any other property of their company, and, since that company has the right to consolidate with the New York City and Suburban Water Company, it would seem that that stock or its proceeds will have to abide the event of the effort to consolidate.

The order should be reversed, with ten dollars costs and the disbursements on this appeal to the defendants, and the original injunction should be vacated.

BARNARD, P. J., concurred; DYKMAN, J., not sitting.

Order reversed, with costs and disbursements, and motion to vacate injunction order, granted, with costs.